*CJP Supp. 207 Opinion
KAHN, Chairperson.
This disciplinary matter concerns Judge Patrick Couwenberg, a judge of the Los Angeles County Superior Court. Judge Couwenberg was charged with (1) misrepresenting his educational background on his personal data questionnaires when seeking judicial appointment; (2) falsely representing, in the course of seeking a judicial appointment in 1996, that he was a Vietnam veteran; (3) misrepresenting his educational background, legal experience and affiliations on his 1997 judicial data questionnaire; (4) falsely representing to the judge who was to introduce him at the public enrobing ceremony that he was a Vietnam veteran who had *CJP Supp. 208 received a Purple Heart; (5) falsely representing to attorneys that he went to Vietnam, had a master’s degree in psychology and had shrapnel in his groin received in military combat; (6) falsely telling a newspaper reporter that he was in Vietnam in 1968 and 1969; and (7) making false statements about his education and military experience in letters and in testimony to the commission during its investigation of his conduct.
A panel of three judges, sitting as special masters, found that virtually all of the factual allegations were supported by clear and convincing evidence. For the reasons set forth in this decision, the commission adopts the masters’ findings of fact. The commission finds that Judge Couwenberg made misrepresentations in order to become a judge, continued to make misrepresentations while a judge, and deliberately provided false information to the commission in the course of its investigation. For this misconduct, the commission hereby removes Judge Patrick Couwenberg from the bench.
PROCEDURAL HISTORY
Judge Couwenberg first sought a judicial appointment in 1993 in Los Angeles or Orange County and filled out a personal data questionnaire (PDQ) dated October 18, 1993. He was not successful. He applied again in 1996, this time limiting his application to Los Angeles County. His second PDQ is dated July 10, 1996.
Governor Wilson appointed Judge Couwenberg to the Superior Court of Los Angeles County on April 24, 1997. On July 31, 1997, Judge Couwenberg signed a completed judicial data questionnaire (JDQ) that was provided by, and returned to, the presiding judge. A public enrobing ceremony was held on August 25, 1997, for Judge Couwenberg and 11 other new judges. Retired Judge Frisco introduced Judge Couwenberg and the other new judges. He based his introduction of Judge Couwenberg on Judge Couwenberg’s JDQ and discussions with Judge Couwenberg.
On February 19, 1998, the Los Angeles Daily Journal published a profile of Judge Couwenberg noting his inconsistent statements about serving in Vietnam. This profile prompted the filing of a complaint with the commission (the complainant sent a copy to Judge Couwenberg) alleging that Judge Couwenberg had lied about having a degree from the California Institute of Technology (Cal Tech), being a Vietnam veteran, and receiving a Purple Heart.
On March 13, 1998, the commission received an unsolicited letter from Judge Couwenberg in response to the complaint, which included the statement, “At no time did I lie to the Governor nor did I attempt to mislead anyone.”
*CJP Supp. 209 On August 25, 1998, the commission sent a preliminary investigation letter to Judge Couwenberg. The investigation continued over the next year with responses from the judge and a second letter from the commission. In December 1999, the commission wrote Judge Couwenberg indicating that it was concerned that he had provided false and misleading information in response to the commission’s inquiries concerning his military service and requested that he come to the commission’s office for the taking of a statement. On January 21, 2000, Judge Couwenberg, accompanied by counsel, came to the commission’s office and gave a statement under oath.
On June 30, 2000, the commission filed a six-count notice of formal proceedings. Another investigation letter was sent to Judge Couwenberg on July 25, 2000, a response was received in September, and on October 20, 2000, the commission filed a nine-count first amended notice of formal proceedings.
In the meantime, on August 17, 2000, the Supreme Court appointed three judges as special masters in this case. The evidentiary hearing before the masters[1] commenced on February 21, 2001, and concluded February 28, 2001. Mr. Jack Coyle and Mr. Sei Shimoguchi of the commission’s office of trial counsel presented the case in support of the charges. Judge Couwenberg was represented by Mr. Edward P. George, Jr., Mr. Thomas M. Goethals, and Mr. Timothy L. O’Reilly. The masters submitted their 47-page report to the commission on May 16, 2001.
Following receipt of objections and briefs from Judge Couwenberg and the office of trial counsel, the matter was orally argued before the commission on July 19, 2001. Mr. Coyle presented argument on behalf of trial counsel and Mr. George and Mr. Goethals presented argument on behalf of Judge Couwenberg.
FINDINGS OF FACT
A. Counts One and Two—Misrepresentations on the Personal Data Questionnaires
An applicant for judicial appointment submits a completed PDQ to the Governor. In addition to being reviewed by the Governor, when Judge Couwenberg submitted his PDQ’s in 1993 and 1996, they were sent to the Commission on Judicial Nominees Evaluation of the State Bar of California *CJP Supp. 210 and the judicial selection advisory board, to facilitate those entities’ review of the applicant. Representatives for both entities testified that the entities generally assumed that the factual information on a PDQ was true and that discovery of an applicant’s material misrepresentation on the PDQ would end the applicant’s chance of a favorable report.
The masters found that on both of his PDQ’s, Judge Couwenberg provided the following false information: (1) he had attended California State Polytechnic University, Pomona (Cal Poly Pomona) from 1964 to 1968 when he had actually attended from 1966 to 1968 only, and had attended Chaffey Junior College from 1963 to 1966, which information was omitted from the PDQ’s; (2) he went to California State University, Los Angeles (Cal State L.A.), from 1970 to 1972 and received a master’s degree, when he was never enrolled there and did not have a master’s degree from any school; (3) there was no mention that he attended Western State University College of Law from 1969 to 1970; (4) he attended Loyola Law School in 1972 and 1973, when he never went to Loyola; (5) he attended University of La Verne College of Law from 1973 to 1976 when he actually attended La Verne from 1970 to 1973.
Judge Couwenberg admitted that the information was false, but denied that he provided “intentionally false” information. The masters rejected Judge Couwenberg’s attempts to distance himself from the misrepresentations. They found that it “is simply not believable that the judge would be uncertain who filled out his judicial application,” and that “even assuming that his wife did type the applications, it is not believable that she remembered the specifics of his educational background for 20 years.” In response to Judge Couwenberg’s claim that he did not review the educational information on the PDQ’s because he did not believe it was important, the masters stated that a “judicial candidate must assume that everything on the application form to the Governor is of some importance or it would not be on the form,” and found that “Judge Couwenberg’s professed view that education is essentially irrelevant to a judicial application is manufactured, in an effort to minimize his lies to the Governor.” They further noted that even “according to the judge’s version of the facts, he knowingly provided false information to the Governor—he assumed that his wife would provide the false information he had given her, but did nothing about it.”
The masters had little trouble understanding why Judge Couwenberg lied. They noted: “The reason for these lies is self-evident. Seeking appointment to the bench is a competitive situation. Judge Couwenberg would have been competing with 20 to 30 applicants. The school the judge lied about attending (Loyola) is more prestigious (as he acknowledged) than the ones he actually attended (La Verne and Western). It was also the only school of the three that *CJP Supp. 211 was accredited. As he admitted, he told his wife he went to a large accredited law school ‘to make himself look better.’ His testimony that he didn’t want to make a similar impression on the Governor because he’d already told his wife that is not credible.” They also noted: “It is also more impressive to have passed the bar exam on the first try than after multiple attempts. Regardless of the Judge’s attempt to portray failing the bar five times as something positive, this is the only logical reason for listing the date of graduation from La Verne as 1976, rather than the true date of 1973.” The masters concluded that Judge Couwenberg “knowingly and intentionally provided the Governor with false information material to his applications for judicial appointment,” and noted that had the lies been discovered at the time, he would not have been appointed to the bench.
The masters’ findings concerning the allegations in counts one and two of the first amended notice of formal proceedings are supported by clear and convincing evidence and the commission adopts the masters’ findings.
B. Count Three—Statements to Judges About Serving in Vietnam
The masters found that in late 1995 or early 1996, Judge Cowell of the Los Angeles County Superior Court, in order to further Judge Couwenberg’s efforts to obtain a judicial appointment, arranged a luncheon with Judge Couwenberg, Judge DiLoreto, and himself. Judge DiLoreto had been helpful to Judge Cowell in obtaining a judgeship, and Judge Couwenberg wanted to meet Judge DiLoreto.
At the lunch, Judge Cowell made a reference to Judge Couwenberg’s being a veteran. The masters explain: “Judge DiLoreto then asked Judge Couwenberg, ‘you were in Vietnam and you were in combat?’ As Judge DiLoreto recalls, the judge said ‘yes.’ Judge Cowell was not sure if Judge Couwenberg nodded or said yes, but testified that Judge Couwenberg affirmed Judge Cowell’s statement that he was in Vietnam in some manner, and ‘certainly did not disabuse us [of] the idea that he was a veteran.’ ” Judge DiLoreto told Judge Couwenberg that it was critical that Governor Wilson know this because both he and his judicial appointments secretary, Mr. John Davies, were ex-Marines. Judge Couwenberg indicated that he thought it was important too.
The masters noted that Mr. Davies testified that a war record was a plus with Governor Wilson and that he recalled his interview with Judge Couwenberg because of his “unusual war experiences.” He did not recall the details, but remembered that it involved “undercover work” and that there was some “sort of heroism involved.”
After the lunch meeting, Judge DiLoreto took several steps to help Judge Couwenberg. He called another judge to try and find out what had happened *CJP Supp. 212 to Judge Couwenberg’s 1993 application, he called Judge Couwenberg a couple of times, and he called Mr. Davies to check on the status of Judge Couwenberg’s application.
The masters noted that Judge Couwenberg claimed that he did not think that he discussed his military career when he met with Mr. Davies and that he remembers having lunch with Judge DiLoreto only (not with both Judges Cowell and DiLoreto), and denies any recollection of discussing Vietnam or his military career. The masters, however, credited the testimony of Mr. Davies as well as the testimony of Judges Cowell and DiLoreto that the luncheon conversation took place as alleged in count three.
The masters’ findings, that Judge Couwenberg met with Judges Cowell and DiLoreto and in furtherance of his efforts to obtain a judicial appointment affirmed that he was a veteran of the Vietnam War, are supported by clear and convincing evidence and the commission adopts those findings as its own.
Count three also alleged that Judge Cowell submitted a letter to Governor Wilson on Judge Couwenberg’s behalf, which included the false statement that Judge Couwenberg was a veteran of the Vietnam War. The masters found that such a letter was written by Judge Cowell and given to Mrs. Couwenberg (Judge Cowell’s court reporter) to prepare the envelope and mail. The Governor’s office, however, could not locate the letter. The masters found that the evidence was insufficient to establish that the letter was in fact sent. The commission accepts the masters’ findings concerning the letter and dismisses the allegations in count three concerning the letter.
C. Count Four—Misrepresentations on the Judicial Data Questionnaire
Judge Couwenberg received a JDQ from the presiding judge’s office, filled it out, signed it on July 31, 1997, and returned it to the presiding judge. The presiding judge provided Judge Frisco with a copy of the JDQ for the enrobing ceremony. The JDQ is used as a record of a judge’s background information and for public announcements.
Judge Couwenberg’s JDQ had the following misrepresentations: (1) his attendance at Chaffey Junior College and Western State University College of Law are omitted; (2) he falsely claims to have attended Loyola Law School (listed here as 9/73 through 9/74, as opposed to 9/72 through 6/73 on the PDQ’s); (3) the dates of attendance at University of La Verne College of Law are 9/74 through 6/76, when his actual attendance dates were 1970 to 1973; (4) the attendance dates for Cal Poly Pomona are 9/64 through 6/66, when he actually attended that school from 1966 to 1968; (5) he attended “Cal Inst of *CJP Supp. 213 Techn. Pasadena” (Cal Tech) from 9/66 to 6/68 and received a Bachelor of Science degree from that school, when he never attended Cal Tech; (7) the box next to “Veterans of Foreign Wars” was checked although Judge Couwenberg was never a member; (8) under “Armed Services Record,” he entered “US Navy,” instead of “US Navy Reserve”; and (9) under “Private Practice Experience,” the application noted, “1976 Gibson, Dunn,” although Judge Couwenberg never worked for the law firm of Gibson, Dunn & Crutcher.
There is no dispute as to the falsity of these statements. Judge Couwenberg attempted to sidestep responsibility by denying that he filled out the form himself. The masters found Judge Couwenberg’s testimony “inconsistent and vague.” They noted that Judge Couwenberg’s claim that he did not review the JDQ before he signed it was inconsistent with his response letter to the commission, that he had no explanation for some of the false entries, and that his claim that the Cal Tech entry was a joke was contradicted by his statement under oath in January 2000 and by Judge Frisco. The masters concluded that Judge Couwenberg provided false information on the JDQ about his education, military service, and past employment. The masters’ findings are supported by clear and convincing evidence and the commission adopts those findings as its own.
D. Count Five—Misrepresentations to Judge Frisco
The masters found that Judge Couwenberg gave or affirmed to Judge Frisco the following false information (as alleged in count five): (1) he was recruited from the Navy to the Army, when he was in the Navy Reserve and never in the Army; (2) he attained the rank of corporal in the Army; (3) he served in the Army for two years and was in Vietnam for 16 months, when he was never in the Army in Vietnam or elsewhere; and (4) he had received a Purple Heart, when he had never received or been eligible to receive a Purple Heart.
With the exception of the statement that he was recruited from the Navy to the Army, this false information was included in Judge Frisco’s introductory remarks at the enrobing ceremony, along with false information that Judge Couwenberg attended Cal Tech for two years, earned a B.S. in physics from Cal Tech, and attended Loyola Law School for a year.
Judge Couwenberg admits that Judge Frisco’s introductory remarks regarding his military service were false, but claims that he “does not recall” giving the alleged information or affirming it to be true. The masters rejected Judge Couwenberg’s testimony noting that (1) in his prehearing statement under oath, Judge Couwenberg admitted making certain misrepresentations to Judge *CJP Supp. 214 Frisco; (2) Judge Frisco’s handwritten notes of his conversations with Judge Couwenberg reflect that Judge Couwenberg was the source of the false information; (3) his claim that he discussed Cal Tech with Judge Frisco because Cal Tech was listed on the JDQ, is inconsistent with his testimony that he told his wife to list Cal Tech on the JDQ after he had joked with Judge Frisco about the difference between Cal Poly Pomona and Cal Tech; and (4) Judge Couwenberg’s testimony that he thought the enrobing ceremony would be in the nature of a humorous roast is not believable as he admits that he had never been to an enrobing ceremony, which by its nature is a serious event, and he could not think of how receiving a Purple Heart could be mentioned as a joke. The masters also noted that Judge Couwenberg had the opportunity to correct Judge Frisco both before and after the enrobing ceremony, but did not do so.
The masters’ findings that Judge Couwenberg gave or affirmed to Judge Frisco false information concerning his military service are supported by clear and convincing evidence and the commission adopts those findings.
E. Count Six—False Statements to Attorneys
An experienced attorney, who appeared frequently before Judge Couwenberg, testified that Judge Couwenberg told a group of attorneys in the courthouse that (1) he moved to the United States when he was 18 and shortly after that served in the armed forces; (2) he went to college on the GI Bill; (3) he received his undergraduate degree in physics from Cal Tech; (4) he had a master’s degree in psychology; and (5) he had a medical appointment for shrapnel in his groin.[2]
Judge Couwenberg in his answer denied making such statements but acknowledged that they would have been false if made. He claimed that he sometimes made statements about his background that were humorous or made in jest.
The masters found that Judge Couwenberg made the statements recalled by the attorney and that the statements were false. They noted that there is no reason to doubt the attorney’s testimony and that it is documented that Judge Couwenberg made the same or similar false statements elsewhere.
The masters’ findings are supported by clear and convincing evidence and the commission adopts those findings.
*CJP Supp. 215 F. Count Seven—The Daily Journal Profile
On February 19, 1998, the Los Angeles Daily Journal published a profile of Judge Couwenberg written by reporter Cheryl Romo, which was based on her two interviews with the judge. Ms. Romo had worked for the Daily Journal for over six years and testified that Judge Couwenberg made the statements to her that were quoted in the article. Specifically, he falsely stated in the initial interview that he was in Vietnam in 1968 and 1969 and saw combat. In the subsequent interview he told her that he was in the United States Navy Reserve from 1965 to 1969, that he was not in Vietnam and that she should “just leave that part out.”
The masters stated that they “are convinced that Judge Couwenberg initially made the false statements about his military service,” but “are likewise convinced that he effectively retracted these misrepresentations in his later conversations with Romo and his direction to ‘leave that part out.’ ”
The masters’ findings that Judge Couwenberg initially made false statements and subsequently sought to retract those misrepresentations are supported by clear and convincing evidence and are adopted by the commission.
G. Counts Eight and Nine—Misrepresentations During the Commission’s Investigation Concerning Covert Operations and Educational Background
1. Misrepresentations About Covert Operations
The masters noted that count eight alleges that in January 2000, Judge Couwenberg under oath “testified falsely that he had been involved in covert Central Intelligence Agency (CIA) operations in Southeast Asia between June 1968 and December 1969, and had made a delivery of funds or documents to Africa for the CIA around 1984. Count nine alleges that in three response letters to the commission (two before and one after his statement under oath), the judge both implied and stated the same false claim about participating in covert CIA operations in 1968-1969.”
The masters found these allegations to be true. They found that Judge Couwenberg “was never affiliated with the CIA or any other agency involved in covert operations during the Vietnam War, and was not involved in any CIA covert operations at any time.” The masters rejected Judge Couwenberg’s testimony at the hearing where he maintained his story was true. They found that his testimony “was vague and unpersuasive in and of itself, is contradicted in part by circumstantial evidence, and was not corroborated. Most *CJP Supp. 216 significantly, it was flatly refuted in its entirety by compelling testimony from a representative of the CIA.”
The masters noted that in his January 2000 statement under oath Judge Couwenberg “testified at length that he had participated in a covert CIA operation in Southeast Asia . . . where, among other adventures, he was wounded in a firelight resulting in his purported shrapnel wound.” Also, in a subsequent letter to the commission, dated May 26, 2000, “the judge again stated that he participated in a classified, covert CIA operation in the Far East in 1968 and 1969 on two separate operations.”
Military records establish that Judge Couwenberg received an honorable early discharge from the Navy Reserve in 1967 because of a liver problem. Judge Couwenberg testified that in 1966 he met a man named Jack Smith (or it could have been Jones), who told him that he could get a discharge without fulfilling his six-year commitment with the Navy Reserve if he said there was something medically wrong with him. The masters noted that Judge Couwenberg “claims he told Smith he didn’t want a medical discharge, and testified that he did not know until receiving discovery in this case that he had been discharged for these reasons. However, it is apparent that he knew of the medical discharge at the time. In a letter dated September 5, 1966, from the judge to his commander, the judge discusses his prospective medical discharge.”
Judge Couwenberg testified that he went to Laos for a month in December 1968 and then went again for three or four weeks around June 1969. During this time he was working full time with the Los Angeles County Department of Social Services. Judge Couwenberg claimed he was able to be absent from work without a problem, despite the fact that he had started work there in June 1968. He could not recall whether he took vacation or leave without pay and he produced no employment records to verify that he was off work during these periods.
Mr. William McNair has been designated by the head of the CIA as the records validation officer. Although the CIA is not subject to a commission subpoena, the CIA voluntarily agreed to allow Mr. McNair to testify. Mr. McNair stated that the CIA has records of everyone who has ever been engaged in a clandestine or covert relationship with the CIA in an operational capacity. These records have been maintained since the mid-1940’s and include anyone an operations officer has talked to and considered using. McNair testified that a thorough search was made of the CIA records to determine whether Judge Couwenberg, by any name, appears in the CIA records. He does not. Accordingly, he was never under consideration for, or employed by or utilized for, clandestine operations by the CIA. Mr. McNair *CJP Supp. 217 testified, “if someone were picked out, recruited in the U.S., and transported to Laos under our sponsorship, we would have a record of it.”
Mr. McNair further testified that at the time in question there were no other United States agencies operating in Laos. The only speculative possibility would have been an agency operating illegally. Mr. McNair testified that he was well versed in what was going on in Laos at the time and would be “stunned” to find out any agency other than the CIA was conducting an operation in Laos, such as described by Judge Couwenberg.
Judge Couwenberg also testified that the same agency that sent him to Laos used him to make a delivery in Africa in the 1980’s. Mr. McNair testified that if the CIA had so employed Judge Couwenberg, the CIA would have a record of the event and that the CIA does not have any record of the alleged event.
The masters noted that Judge Couwenberg now suggests that he never said he was with the CIA, but only guessed or assumed that the agency was the CIA. They find, however, that “the evidence is clear that Judge Couwenberg wanted the commission to believe that he was with the CIA, and ultimately flatly asserted as the truth that he was with the CIA.” They noted his January 2000 testimony under oath and his letters to the commission, particularly Judge Couwenberg’s May 26, 2000, response through counsel which states that the “August 3, 1999 letter correctly states that Judge Couwenberg participated in a classified, covert CIA operation in the Far East.”[3]
The masters’ findings that Judge Couwenberg testified falsely that he had been involved in covert CIA operations in Southeast Asia in December 1968 and June 1969 and had made a delivery of funds or documents to Africa for the CIA around 1984 are supported by clear and convincing evidence and the commission adopts those findings.
2. False Testimony Concerning a Master’s Degree
Judge Couwenberg admits that he was never enrolled at Cal State L.A. and has no master’s degree. Nonetheless, on January 21, 2000, Judge Couwenberg came to the commission and gave a statement under oath which included the following:
“Q. And after Cal State Pomona your education after that?
*CJP Supp. 218 “A. After that I went part time to Cal State. Then went to law school, graduated from the University of La Verne.
“Q. Okay. When you say you went to Cal State part-time, Cal State Pomona?
“A. L.A.
“Q. And did you get a degree from Cal State L.A.?
“A. Yes.
“Q. What was the degree in?
“A. Psychology.
“Q. Master’s degree?
“A. (Witness nods head).
“MS. DOI: I am sorry, I don’t think that was verbal.
“THE WITNESS: Yes.
“MR. COYLE: Q. Do you know why it is that your master’s degree from Cal State L.A. would not be on the Judge’s Data Questionnaire?
“A. I have no idea.”
When this misrepresentation was first brought to Judge Couwenberg’s attention, he suggested that he failed to focus on the question. At the hearing before the masters, Judge Couwenberg stated that he was focused on the question, that his response was not true, and that he volunteered the information. When asked why this was not perjury, he responded, “I suppose in the true sense it is. I just don’t know why I did it.”[4]
The masters concluded that as a matter of fact and law that when Judge Couwenberg testified under oath on January 21, 2000, that he had a master’s degree in psychology from Cal State L.A., he knowingly gave material false *CJP Supp. 219 testimony under oath. The masters’ findings are supported by clear and convincing evidence and the commission adopts those findings.
JUDGE COUWENBERG’S MENTAL DEFENSE
Judge Couwenberg offered as a psychological defense that he had a mental condition known as “pseudologia fantástica.” This defense was presented by Judge Couwenberg’s expert witness, psychiatrist Dr. Charles V. Ford. He described pseudologia fantástica as “story telling that often has sort of a matrix of fantasy interwoven with some facts.”[5] Dr. Ford, as well as Judge Couwenberg’s two other medical experts, however, agreed that the objective medical tests that were administered to Judge Couwenberg did not reveal any suggestion of cognitive or psychological disorder. Dr. Ford conceded that pseudologia fantástica is a description rather than a diagnosis.
The masters recognized that there was evidence that Judge Couwenberg was in a detention camp as a very young child in Indonesia and suffered racial discrimination in Holland in his youth. Judge Couwenberg’s doctors said that these experiences caused him to have low self-esteem which, according to Dr. Ford, led to pseudologia fantástica. The masters found little evidence of this connection. They noted that none of the psychological tests revealed any evidence of a traumatic stress disorder, Judge Couwenberg had never been treated for any psychological disorder, and the subscales for posttraumatic stress disorder in the Minnesota Multiphasic Personality Inventory test were all normal. They further noted that the many letters of recommendation on behalf of Judge Couwenberg suggest that he never exhibited any self-image problems either as an attorney or as a judge.
The masters properly questioned whether a judge may avail himself or herself of a psychological defense in a disciplinary hearing. They also noted that there was no evidence that Dr. Ford’s contentions regarding pseudologia fantástica are accepted in the psychiatric community. They further opined that unless low self-esteem is a recognized mental disorder, it makes no difference whether or not the judge had the symptom of pseudologia fantástica, because a symptom without some mental disorder is of no legal consequence to the allegations of misconduct. The masters concluded as a matter of fact and law that Judge Couwenberg did not have any mental condition that excuses or mitigates his misconduct in this case.
*CJP Supp. 220 The commission agrees that Judge Couwenberg does not have any mental condition that excuses or mitigates his misconduct. As noted by the masters, the possession of a “symptom” without any mental disorder is of little legal consequence. Also, it appears that pseudologia fantástica is an attempt to explain why a person lies in a way that does not directly promote his or her self-interests. The reasons for Judge Couwenberg’s misrepresentations, however, are self-evident. He misrepresented his qualifications in order to become a judge, to maintain the false premise which appears to have been critical to his judicial appointment, and to frustrate the commission’s investigation. As Judge Couwenberg’s misrepresentations were clearly calculated to advance his self-interests, a theory aimed at explaining why a person lies in a way that does not obviously advance the person’s self-interests has no application. Furthermore, as put forward by Dr. Ford, pseudologia fantástica attempts to explain why a person knowingly lies. Judge Couwenberg has not admitted to many of his lies, such as making misrepresentations to Judge Frisco and his alleged presence in Laos in 1968 and 1969. The application of Dr. Ford’s contentions to these misrepresentations would suggest that Judge Couwenberg is continuing to knowingly lie to the commission.
CONCLUSIONS OF LAW
A. Counts One and Two (the Personal Data Questionnaires)
The masters noted that although the PDQ’s were submitted before Judge Couwenberg became a judge, a judge’s prebench conduct is subject to general ethical standards.[6] The commission has jurisdiction to sanction a judge for conduct occurring within six years prior to the start of the judge’s current term of office (Cal. Const., art. VI, § 18, subd. (d)). The masters observed that judges have been disciplined for prebench conduct that was determined to constitute “conduct prejudicial to the administration of justice that brings the judicial office into disrepute.”[7]
The masters concluded: “Submitting false PDQs to the Governor constitutes an obvious violation of general ethical standards, and constitutes *CJP Supp. 221 prejudicial misconduct. Honesty is a ‘minimum qualification’ expected of every judge (Kloepfer v. Commission on Judicial Performance (1989) 49 Cal.3d 826, 865 [264 Cal.Rptr. 100, 782 P.2d 239]) and presumably of eveiy applicant for judicial position. Judge Couwenberg’s falsehoods create the appearance that he obtained his judicial office by deceit. The 1996 PDQ also violates canon 5’s specific prohibition against a knowing misrepresentation of qualifications. A judicial applicant who gets appointed after submitting falsified qualifications brings the judiciary into disrepute and damages public confidence in the integrity of the judiciary.”[8]
For the reasons set forth by the masters, the commission concludes that Judge Couwenberg’s submissions of PDQ’s to the Governor, which included misrepresentations as to his educational background, constitute conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
B. Count Three—Statements to Judges About Serving in Vietnam
The commission has found that in an effort to further the likelihood of a judicial appointment, Judge Couwenberg had lunch with Judges DiLoreto and Cowell and falsely affirmed to them that he was a veteran of the Vietnam War. Judge Couwenberg’s conduct violated California Code of Judicial Ethics canon 5B and constitutes conduct prejudicial to the administration of justice that brings the judicial office into disrepute.
C. Count Four—Misrepresentations on the Judicial Data Questionnaire
The commission agrees with the masters that Judge Couwenberg’s false statements on the JDQ constitute willful misconduct in office. Judge Couwenberg was acting in his judicial capacity when he filled out the JDQ. He had already assumed judicial office. The form was used exclusively for judges in connection with public enrobing ceremonies and other administrative purposes concerning the judges. Judge Couwenberg received the JDQ from the presiding judge’s office and returned it to that office. As noted by the masters, by definition, providing material false information about one’s qualifications and experience is done in bad faith, i.e., for a purpose other than the faithful discharge of judicial duties. Also, providing such false information about one’s experience and qualifications violates the basic *CJP Supp. 222 precepts of California Code of Judicial Ethics canon 1 (judge shall uphold the integrity of the judiciary) and canon 2 (judge shall avoid impropriety and the appearance of impropriety in all of the judge’s activities, and act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary).
D. Count Five—Giving False Information to Judge Frisco
The commission agrees with the masters that giving false biographical information to Judge Frisco for use in the public enrobing ceremony constitutes willful misconduct. The statements were made in Judge Couwenberg’s judicial capacity, to another judge in connection with the public enrobing ceremony, and were not made for the faithful discharge of judicial duties, but to mislead Judge Frisco, other members of the legal community and the public.
E. Count Six—False Statements to Attorneys
The commission has found that Judge Couwenberg made false statements in the courthouse to attorneys regarding his background and education. This conduct violated canons 1 and 2A of the Code of Judicial Ethics and constitutes conduct prejudicial to the administration of justice that brings the judicial office into dispute.
F. Count Seven—Misrepresentations to the Newspaper Reporter
The commission has found that Judge Couwenberg falsely stated to the newspaper reporter that he saw combat in Vietnam and then in a subsequent conversation told her that he was not in Vietnam and that she should “just leave that part out.” The newspaper article accurately recounted the false statement, the subsequent withdrawal and the direction to leave the information out. Judge Couwenberg knew or should have known that a misrepresentation of this caliber, when made to a newspaper reporter who was preparing an article on the judge, would become public. The commission concludes that Judge Couwenberg’s misrepresentation violated canon 2A of the Code of Judicial Ethics and constitutes improper action.
G. Counts Eight and Nine—Misrepresentations During the Commission’s Investigation Concerning Covert Operations and Educational Background
The commission agrees with the masters that Judge Couwenberg’s conduct in providing false information to the commission, both in his written responses to commission investigation letters and in his testimony, constitutes *CJP Supp. 223 willful misconduct. He was acting in his judicial capacity when he took these actions. (See Adams v. Commission on Judicial Performance (1995) 10 Cal.4th 866, 910 [42 Cal.Rptr.2d 606, 897 P.2d 544] [judge acts in judicial capacity when responding to investigation letters from commission].) Judge Couwenberg’s responses and testimony were given in bad faith. (See Adams, supra, 10 Cal.4th at pp. 910-911 [judge acts in bad faith by providing false and misleading information in response to investigation letter from commission]; Fletcher v. Commission on Judicial Performance (1998) 19 Cal.4th 865, 887-891 [81 Cal.Rptr.2d 58, 968 P.2d 958] [judge committed willful misconduct in presenting commission with grossly incomplete and misleading responses and with continually shifting explanations].) Finally, as noted by the masters, providing false information to the commission, in writing and in sworn testimony, constitutes egregious violations of the fundamental precepts of canons 1 and 2 of the California Code of Judicial Ethics. (See Adams, supra, 10 Cal.4th at p. 914.)
DISCIPLINE
The commission is guided by the Supreme Court’s reiteration that the purpose of a judicial disciplinary proceeding is not punishment, “but rather the protection of the public, the enforcement of rigorous standards of judicial conduct, and the maintenance of public confidence in the integrity and independence of the judicial system.”[9] The commission concludes that these purposes require the removal of Judge Couwenberg from the bench.
The facts establish that Judge Couwenberg’s successful application for a judicial appointment was premised on material misrepresentations. First, through misrepresentations on his PDQ he made it appear that he was in school from 1964 through 1976, except for two years between his undergraduate degree and starting on a master’s degree. In fact, Judge Couwenberg never entered any master’s degree program. His misrepresentations also masked, and thereby avoided any questions concerning, the three-year period of time between his graduation from law school and admission to the California State Bar. Second, Judge Couwenberg encouraged Judges Cowell and DiLoreto, and the Governor’s judicial appointments secretary (according to his testimony) to believe that Judge Couwenberg was a veteran of the Vietnam War. As noted by the masters, seeking appointment to the bench is a competitive situation. Although there is no evidence of the Governor’s reasons for appointing Judge Couwenberg, it appears that Judge Couwenberg’s misrepresentations were critical to his judicial appointment. Any discipline *CJP Supp. 224 other than removal would leave the public paying Judge Couwenberg for a judgeship he apparently procured through misrepresentations.
Second, Judge Couwenberg lied in writing and in testimony under oath to the commission during the course of its investigation. The Supreme Court has noted that there “are few judicial actions in our view that provide greater justification for removal from office than the action of a judge in deliberately providing false information to the Commission in the course of its investigation.” (Adams v. Commission on Judicial Performance, supra, 10 Cal.4th at p. 914.) When his misrepresentation that he was in the Army in Vietnam was exposed, Judge Couwenberg told the commission—in testimony and in writing—that he had been employed by the CIA in Laos. When the CIA refuted this lie, Judge Couwenberg testified that he was in Laos working for some other agency—a representation that the masters found to be a lie. In addition, Judge Couwenberg volunteered in a statement under oath that he had a master’s degree. At the hearing before the masters, he basically admitted that this was perjury. Any discipline other than removal for such blatant misrepresentations might well encourage others who are investigated by the commission to prevaricate and develop faulty memories.
Although some of the false information concerning Judge Couwenberg’s education on his PDQ’s reflected misrepresentations that he first made years ago, his fanciful military career is of a more recent vintage. The record suggests that initially Judge Couwenberg simply failed to correct others when they misrepresented that he had been in the Vietnam War and that this developed into affirming the misrepresentation. By 1997 Judge Couwenberg was emboldened to tell Judge Frisco that he had received a Purple Heart as a result of being injured in Vietnam while in the Army. By 2000, however, Judge Couwenberg had admitted that these representations were lies, and was asserting that he had been employed by the CIA in Laos. At the hearing before the masters, Judge Couwenberg contended that he was not employed by the CIA, but by some other agency in Laos. The masters found clear and convincing evidence that this was not credible. Thus, the record shows that Judge Couwenberg’s inability to testify forthrightly about himself is an ongoing, rather than past, problem.
Third, Judge Couwenberg’s persistent misrepresentations might well require his removal from the bench, even if the misrepresentations had not been critical to his bid for a judicial appointment and had not been made to the commission in the course of its investigation. The Supreme Court has noted that honesty is a “minimum qualification[]” expected of every judge (Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d at p. 865). The commission has in a prior decision observed that the “public will *CJP Supp. 225 not, and should not, respect a judicial officer who has been shown to have repeatedly lied for his own benefit.”[10]
Judge Couwenberg complains that the masters failed to consider the • numerous letters and witnesses testifying to his exemplary judicial performance and urges that on the basis of such “mitigating” evidence, the commission allow him to remain on the bench. Even assuming that his judicial performance was exemplary, it would not excuse his misconduct. In Kloepfer v. Commission on Judicial Performance, supra, 49 Cal.3d at page 865, the Supreme Court noted that “a good reputation for legal knowledge and administrative skills,” although relevant to the degree of discipline, does not mitigate either willful misconduct or conduct prejudicial to the administration of justice that brings the judicial office into disrepute. Here, the record indicates that Judge Couwenberg committed four counts of willful misconduct and four counts of prejudicial conduct in what appears to be a deliberate course of misrepresentation. He lied to become a judge, elaborated on his misrepresentations for his enrobing ceremony, and subsequently lied to the commission in an apparent attempt to frustrate its investigation. A public censure would not adequately convey the commission’s reproval of Judge Couwenberg’s course of misconduct. (See Spruance v. Commission on Judicial Qualifications (1975) 13 Cal.3d 778, 802 [119 Cal.Rptr. 841, 532 P.2d 1209].) The commission is convinced that protection of the public and the judiciary’s reputation requires Judge Couwenberg’s removal from the bench. (See Fletcher v. Commission on Judicial Performance, supra, 19 Cal.4th at p. 921.)
CONCLUSION
The commission orders Judge Patrick Couwenberg of the Los Angeles County Superior Court removed from the bench for (1) misrepresenting his educational background on his Personal Data Questionnaires when seeking judicial appointment; (2) falsely representing, in the course of seeking a judicial appointment in 1996, that he was a Vietnam veteran; (3) misrepresenting his educational background, legal experience and affiliations on his 1997 Judicial Data Questionnaire; (4) falsely representing to the judge who was to introduce him at the public enrobing ceremony that he was a Vietnam veteran who had received a Purple Heart; (5) falsely representing to attorneys that he went to Vietnam, had a master’s degree in psychology, and had shrapnel in his groin received in military combat; and (6) making false statements about his education and military experience in letters and in testimony to the commission during its investigation of his conduct. The *CJP Supp. 226 commission concludes that its responsibility to protect the public, to enforce rigorous standards of judicial conduct, and to maintain public confidence in the integrity of the judiciary, require that Judge Couwenberg be removed from office.
This decision shall constitute the order of removal of Judge Patrick Couwenberg and pursuant to the provisions of Commission on Judicial Performance rule 120(a) and article VI, section 18, subdivision (b) of the California Constitution, Judge Patrick Couwenberg is hereby disqualified from acting as a judge.
Commission members Mr. Michael A. Kahn, Judge Rise Jones Pichon, Ms. Lara Bergthold, Judge Madeleine I. Flier, Mr. Marshall B. Grossman, Mrs. Crystal Lui, Justice Vance W. Raye, and Ms. Ramona Ripston voted in favor of all the findings and conclusions expressed herein and in the removal of Judge Patrick Couwenberg from judicial office. Commission member Ms. Gayle Gutierrez did not participate in this proceeding. There are currently two public member vacancies.
The judge’s petition for review by the Supreme Court was denied on January 16, 2002.

 Judge Ina Levin Gyemant of the San Francisco County Superior Court was appointed as the presiding special master. Judge Thomas P. Hansen of the Santa Clara County Superior Court and Judge K. Peter Saiers of the San Joaquin County Superior Court were the associate masters.

 The masters noted that the attorney also testified that Judge Couwenberg stated that he worked for Gibson, Dunn & Crutcher, but that this false statement was not charged in count six.

 Commission on Judicial Performance rule 106 reads, in relevant part: “The written communication of counsel shall be deemed to be the written communication of the judge. Counsel has the authority to bind the judge as to all matters except a stipulation as to discipline.”

 The record suggests at least one possible explanation. Judge Couwenberg had indicated on his PDQ’s that he had a master’s degree. In January 2000, Judge Couwenberg may not have known whether the commission was aware of this misrepresentation. He may have feared that if he failed to repeat this misrepresentation, the commission would investigate the inconsistency between his testimony and his PDQ’s.

 Dr. Ford explained: “When we use the word ‘lying,’ we generally mean that the person knows what he’s saying is not true and is deliberately attempting to mislead another person. There’s a two-part definition to lying. With the pseudologia [f]antastica it is really kind of an admixture of self-deception and trying to present oneself to other people in a certain way and not really related to a conscious intent to defraud or to lie, such as we might see in a person with antisocial personality.”

 The fact that Judge Couwenberg was not yet a judge when he submitted his PDQ’s precluded the masters from reaching a conclusion of willful misconduct in office.

 The masters cited In re Stevens (1981) 28 Cal.3d 873 [172 Cal.Rptr. 676, 625 P.2d 219] (judge censured for discussing his sexual experiences and fantasies with a married couple employed by the Legislature; discussions began while judge was member of the Legislature and continued after he took the bench); In re Blackwell (1999) Public Admonishment No. 18 (judge’s prebench conduct involved his failure to disclose acceptance of overpayment from his former employer, a bank, while seeking a general release of claims against him from the bank); and In re Van Voorhis (1992) Public Reproval No. 8 (public reproval for conduct that included one instance of prebench misconduct, misinforming the public of judge’s marital status during his judicial campaign).

 The masters noted that effective January 15, 1996, the California Supreme Court adopted a revised California Code of Judicial Ethics that includes canon 5B, which provides that a “candidate for election or appointment to judicial office shall not ... (2) knowingly misrepresent the identity, qualifications, present position, or any other fact concerning the candidate . . . .”

 Broadman v. Commission on Judicial Performance (1998) 18 Cal.4th 1079, 1112 [77 Cal.Rptr.2d 408, 959 P.2d 715], citing Adams v. Commission on Judicial Performance, supra, 10 Cal.4th at page 912.

 Inquiry Concerning Murphy (2001) No. 157, Decision and Order Removing Judge Murphy from Office [48 Cal.4th CJP Supp. 179].